UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MIKEL HAYS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:18 CV 1286 RWS |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner Social Security | ) | |
| Administration | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff Mikel Hays brings this action pursuant to 42 U.S.C. §§ 405(g)

seeking judicial review of the Commissioner's decision denying his application for

disability insurance benefits and supplemental security income under Titles II and

XVI of the Social Security Act, 42 U.S.C. §§ 1381 et seq. Because the

Commissioner's final decision is supported by substantial evidence on the record

as a whole, I will affirm the decision of the Commissioner.

## *BACKGROUND*[1]

Plaintiff Mikel Hays asserts that he is disabled based on his lower back and

leg pain, hypertension, anxiety, and his post-traumatic stress disorder (PTSD). His

---

[1] The following medical information is taken from Hays' Statement of Uncontroverted Material Facts (Doc. 20-1)
and the Commissioner's Response to the Statement of Facts (Doc. 25-1).

back injury originates from a fall on the ice.  His PTSD originates from Hays' witnessing a friend shoot himself while they were in the military.

On October 19, 2011, Hays saw Dr. Jerry Meyers at the Breakthrough Pain Relief Clinic.   Hays reported that he had low back pain and a history of a herniated pulposus at L5-S1.  The diagnosis was chronic back pain and herniated nucleus pulposus L5-S1 by history.  Dr. Meyers proscribed Percocet and Valium.

On December 28, 2011, Hays was seen by Dr. Meyers regarding his back pain.  Hays had recurrent symptoms secondary to operating a Bobcat and lifting, Hays was doing concrete and roofing work.

On December 26, 2013, Hays was seen by Dr. Meyers who indicated that Hays had recurrent back pain.  Hays was able to flex to 60° extend 15° and rotate left and had positive lower extremity symptoms.  Percocet and Flexeril were prescribed.

From August through November 2014, Hays was an inmate in the St. Charles County Department of Corrections.  He reported lower back pain radiating to hips and legs.  Hays' had an initial psychiatric evaluation in the jail on September 12, 2014.  Hays reported that he had been subjected to physical and emotional abuse and at age 2 had a broken jaw.  He reported that did not do well in confined spaces, had nightmares about people raping him, and that another soldier had shot himself.  His mood and affect were depressed and anxious but he was

fully oriented to place, had fair insight, and good to fair judgment. Hays was diagnosed with anxiety disorder, depression, and PTSD and prescribed Buspar. While Hays was in jail he was approved for inmate work status. Hays' initial counseling intake form, dated September 9, 2014, notes that Hay's had been diagnosed with PTSD after seeing a friend kill himself in the 1980s. He was tearful and sobbing during the exam and was counseled regarding coping skills but Hays was scarcely interested in the counselor's attempts to discuss coping strategies. In October 2014, he was prescribed Paxil and Clonidine.

On December 3, 2014, Hays went to St. Anthony's Medical Center's ER with complaints of back pain indicating he had run out of Percocet and Valium the prior day. He was diagnosed with chronic back pain and hypertension. He was prescribed hydrochlorothiazide (HCTZ) for his high blood pressure.

On March 2, 2015, Hays presented himself to the emergency room at Mercy Hospital in St. Louis. He complained of chronic back pain and reported that he had stopped taking his pain medications the prior week. He reported that his lower back pain had become exacerbated on August 7, 2014 and had progressively gotten worse. He stated that he injured his L5-S1 vertebrae in 1997 when he had slipped and fell on the ice. He described his pain as a 10 on a scale of 10. An examination revealed lower back pain with no gait problems, no neck pain or neck stiffness. The exam was also negative for any neurological or psychiatric problems. Hays

had a normal range of motion of the back with tenderness, no edema, tenderness to L3L4, amd straight leg raising being negative bilaterally. The diagnosis included degenerative disc disease, arthritis, stain or sprain.

On July 7, 2015, Hays filled out a function report in support of his social security disability claim. In that report Hays claimed that he used a back brace only sometimes if he could not stop or lay down to ease lower back pain. He reported that generic valium gave him bad headaches. He stated that he could not stand to be around large crowds or loud noises. Hays indicated that he could not sit or stand for more than 15-30 minutes; no driving of a light vehicle or heavy equipment; and he does not sleep more than 1 to 2 hours per night. He reported that his days are spent sitting and walking but mostly laying around to try to ease the pain in his lower back. He could prepare small meals once or twice a day and does housework including doing dishes but his mother and girlfriend do his laundry. He does not do household repairs or mowing. He gets out of the house everyday and can drive or ride in a car but not for longer than 15-30 minutes. He can shop for himself for food, clothes, and personal hygiene items but makes a list so he can get what he needs and get out in 5 to 15 minutes. Hays reports he can talk with family and friends and reiterated he "can't stand" to be around crowds. He asserts that he cannot lift more than 5 pounds due to his back pain. He can only walk 50 to 100 feet before having to rest. He can only pay attention for 5-10

minutes, has a problem following anything, and does not get along with authority figures because of his PTSD.  He indicated that his condition affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, concentrate, complete tasks, his memory, his ability to follow instructions, the use of his hands, and getting along with others.  Hays reported that he does not handle stress and is short tempered.  His ability to handle a change in routine is "so-so."  He is able to pay bills, handle a savings account, count change, and use a checkbook.

On August 14, 2015, state agency psychologist James Morgan Ph.D. reviewed the evidence in Hays' file in connection with his disability application. He concluded that Hays had a severe impairment of hypertension and non-severe affective and anxiety disorders.  The affective and anxiety disorders did not result in any restrictions in the activities of daily living; created mild restrictions in maintaining social functioning; mild restrictions in maintaining concentration, persistence, and pace; with no repeated episodes of decomposition.  Morgan found Hays' statements regarding his condition to be partially credible because they were partially supported by the totality of the findings in the file.  He noted that Hays had a limited treatment history and did not currently receive any formal mental health attention.  Given Hays' lack of treatment and his most recent mental status, Morgan concluded that Hays' mental impairment was non-severe.

On October 26, 2015, Hays presented himself for the first time to the Pacific Primary Clinic. He reported to Dr. Heather Gjorgjievski, OD that he had lower back pain. Hays stated that the most discomfort was in his lower left and right lumbar spine with pain radiating to his legs. He said this condition was intermittent, moderate in intensity. He reported that this was a chronic problem with essentially constant pain which began more than 15 years ago when he fell on ice while he was at work. He stated that he saw a micronuerologist who advised against surgery. Hays told Dr. Gjorgjievski that he stopped seeing a pain management doctor 2 years ago but has seen different urgent care doctors. He also told Dr. Gjorgjievski that he had PTSD beginning 29 years ago that is of moderate intensity. He estimated that he experienced symptoms several times a day but that the duration of an episode was quite variable. Aggravating factors included crowds. An associated symptom was insomnia. He reported that his symptoms were relieved with medication. His hypertension was discovered a year ago by a jail doctor. He controls his hypertension with diuretic HCTZ and lisinopril. He takes his medication regularly and had no associated symptoms. He has smoked cigarettes for 30 years and is down to smoking one pack a day from three packs a day. An examination revealed normal results including blood pressure, cardiovascular functions, and psychiatric state. The diagnosis was low back pain, PTSD, hypertension, cigarette smoking. Hays was prescribed the antidepressant

venlafaxine, clonidine for hypertension, a refill of the muscle relaxant cyclobenzaprine, oxycodone/acetaminophen for pain, a refill of the diuretic HCTZ, a refill of lisinopril for high blood pressure, and meloxicam a nonsteroidal anti-inflammatory medication.

On November 23, 2015, Hays had a follow-up visit with Dr. Gjorgjievski and had his prescriptions refilled. On December 21, 2015, Hays was seen by Dr. Gjor for a follow-up visit. He reported being able to go out to lunch with his mom and dad even though he had to leave halfway through but saying that was an improvement due to his difficulty in dealing with crowds. His prescriptions were refilled. On January 19, 2016, Hays had a follow-up visit with Dr. Gjorgjievski for lower back pain and PTSD. His prescriptions were refilled. On February 17, 2016, Hays attended a follow-up visit with Dr. Gjorgjievski for hypertension, low back pain, and insomnia. His mood was stable and he was feeling good psychiatrically. His prescriptions were refilled. On March 11, 2016, Hays had a follow-up appointment with Dr. Gjorgjievski for his PTSD which was of moderate intensity. He was now going to the stores late at night which he had not been able to do before. He had insomnia and was having some bad dreams but he was not always on edge anymore. He complained of lower back pain. His prescriptions were refilled.

Hays continued to have follow-up appointments with Dr. Gjorgjievski from April 15, 2016 through January 10, 2018. Each time Hays complained of back pain and sometimes pain in his legs. His anxiety symptoms were much the same as in past visits. In addition to his normal prescriptions being refilled he was prescribed Xanax and Lamictal in early 2017 which helped his anxiety and anger issues. On February 1, 2018, Dr. Gjorgjievski wrote a letter stating that Hays does not work secondary to chronic pain and PTSD with agoraphobia. She states that Hays is dependent on his mother for financial support, food, clothing, shelter, transportation, and all medical expenses for 2016.[2]

*Application for benefits*

On February 19, 2015, Hayes filed a Title II application for a period of disability and disability insurance benefits. He also protectively filed a Title XVI application for supplemental security income on the same date. He alleged that his disability began on September 1, 1995. On August 17, 2015, the agency denied Hays' claims. Hays requested a hearing before an Administrative Law Judge (ALJ) to challenge the denial of his claims. On April 18, 2017, Hays, accompanied by counsel, attended the hearing before the ALJ. On October 18,

---

[2] The treatment records from Hays' visits with Dr. Gjorgjievski from February 6, 2017 to January 10, 2018 were never presented to the ALJ for consideration. They were submitted by Hays to the Appeals Counsel in the appeal of the ALJ's decision. The Appeals Counsel ruled that the records from February 6, 2017 to October 10, 2017 did not show a reasonable probability that it would change the outcome of the decision. The Appeals Counsel ruled that records from November 7, 2017 to January 10, 2018 and the letter from Dr. Gjorgjievski dated February 1, 2018 did not relate to the period of disability on or before October 18, 2017, the date the ALJ issued her decision.

2017, the ALJ issued her decision finding that Hays was not under a disability.  On June 26, 2018, the Appeals Council denied Hays' request for review.

At the hearing before the ALJ, Hays testified that he was 48 years old, a high school graduate, and lived with his mother.  Hays had worked intermittently in the past as a general contractor and auto mechanic.  He trained in the military as a chef.

Hays testified that his medical conditions kept him from being able to work.  He said he bursts out crying or in anger for no reason.  Walking on concrete caused him severe pain in his lower back, hips, and knees.  Sitting too long and standing too long hurt his back.  Too long sitting would be 30 to 35 minutes.  He would then need to walk around or lay down to ease his lower back pain.  Standing too long would be 15 to 30 minutes.  He would need to sit down or lay down.  He asserts that he spends 40 percent of his day laying down.

Hays testified that it causes him severe pain to walk more than 50 yards.  When he mows the grass he has to get off the mower every 15 minutes to lay down and ease his back pain.  When asked about his anger issues, Hays related a story where he hit a fellow inmate in jail in 2014 because the inmate kept saying that the inmate was in a minority.  He testified that on a daily basis he can get angry to the point where he yells and screams and throws things.  The sort of things that set him off are crowds and hearing people complain about anything.  So it is hard for him

to go to restaurants.  When he goes with his family to a restaurant he has get up and go outside several times to relieve his mood and ultimately has to leave.  He does not like strangers to sit behind him or to the right and left of him because the noise makes him feel trapped.  He feels threatened around strangers but not around family.  When he feels nervous he concentrates on what makes him happy which helps relieve his anxiety.  His Xanax helps him go out and eat and go to the grocery store.  He does not have these experiences when he is home, only when he goes out where there are a lot of people.  A lot of people for Hays is 10 to 15 people.

Hays testified that he was diagnosed with PTSD in the military and by the Department of Corrections.  He stated that he was familiar with the term flashbacks and indicated that he thought he has had flashbacks.  He testified that at some unspecified time he experienced anxiety where he would go to his room and shut the door until it was time to eat or take a shower.  He would often bath in his room in his sink.  However, he told the ALJ that he was bathing and changing clothes regularly now.

He eats one or two meals a day.  Twice to three times a week he may not want to eat.  He testified that he has crying spells three to four times a week, sometimes more, which last an hour and a half to two hours.  He sleeps two to six hours per night.  He then stated that averaged to 15 to 20 hours of sleep per week.

He reported that bad dreams and nightmares would keep him up. That makes him tired during the day and he is afraid someone is going to get him.

His typical day finds him taking out the dogs in the morning and walking around the yard with them. Then he would sit on the porch swing, go inside and watch a little TV, then take the dogs out again. Get a little sleep. Mow the grass once a week, but it is a "trial of periods, even with pain medication." Hays testified he helps him mom with housework and that he can do laundry once a week. He vacuums a room then has to sit down and rest before he vacuums another room. He mops the kitchen floor, sits down, then mops the bathroom floor. Hays testified that he does not go anywhere apart from going to the grocery store, restaurants, and the doctors. He has tried to go to family reunions but has to leave five to ten minutes after he gets there because there is too much noise and too many people around. If he does go to a family gathering he stands or sits with his back against a wall so no one can get behind him.

He testified that his Xanax makes him tired during the day and knocks him out for maybe three to three and a half hours. He is taking Clonidine to help him sleep, Trazadone, Percocet, Flexeril, and another medication for his nerve pain. He takes Cymbalta and Xanax to treat his PTSD and Lisinopril for his hypertension.

Hays asserts that he is disabled due to his chronic back pain, hypertension and PTSD.

Hays filed the present appeal for judicial review seeking the award of benefits because: 1) the ALJ's determination of Hays' residual functional capacity was not supported by "some" medical evidence of record; 2) the ALJ's hypothetical to the VE did not capture the concrete consequence of Hays' impairment.

*Administrative Record*

For evidentiary purposes, I have considered Hays' Statement of Uncontroverted Material Facts (Doc. 20-1) and the Commissioner's Response to the Statement of Material Facts (Doc. 25-1). I have reviewed the documents referred to in those statements as well as additional documents in the record.

*ALJ Decision*

The ALJ found that Hays had engaged in substantial gainful activity in the years 1995, 1996, 1997, 2001, and 2002. She found Hays had not engaged in substantial gainful activity in other the years after his alleged onset date of September 1, 1995. [Doc. 15-4, TR. at 96]. She determined that Hays met the insured status requirements for disability insurance benefits only until June 20, 2010. The ALJ found that Hays suffers from the following severe impairments:

> degenerate disc disease of the lumbar spine, hypertension, anxiety, and post-traumatic stress disorder (PTSD)

[*Id.* at 97]  The ALJ found that this combination of severe impairments did not equate to one of the listings denominated in 20 CFR 404, Subpt. P, App. 1. [*Id.*]

After evaluating Hays' claims, the medical opinion evidence, the medical evidence of record and the testimony at the hearing, the ALJ determined that Hays retained the residual functioning capacity (RFC) to:

> perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b).  He can lift, carry push, or pull 20 pounds occasionally and 10 pounds frequently.  He can sit for six hours in an eight-hour workday and stand or walk for six hours in an eight-hour workday.  He can occasionally balance, stoop, kneel, crouch, and crawl and climb ramps and stairs; however, he can never climb ropes ladders, or scaffolds.  He is limited to simple, routine tasks with minimal changes in a job setting and duties; he can have no contact with the general public and only occasional contact with coworkers and supervisors.

[*Id.* at 98-99]

The ALJ consulted a vocational expert (VE) to assess whether jobs within Hays' RFC existed in significant numbers in the national economy.  [*Id.* at 102] The VE identified the unskilled light occupations of housekeeping, routing clerk, and retail marker.  The VE identified 175,000 housekeeping jobs, 73,960 routing clerk jobs, and 92, 415 retail marker jobs in the national economy.  [*Id.*] The ALJ therefore determined that Hays was not disabled within the meaning of the Social Security Act. [*Id.* at 103]

***LEGAL STANDARD***

To be eligible for disability insurance benefits under the Social Security Act,

Hays must prove that he is disabled.  *Pearsall v. Massanari,* 274 F.3d 1211, 1217

(8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555

(8th Cir. 1992).  The Social Security Act defines disability as the "inability to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A).  An individual will be declared disabled "only

if [her] physical or mental impairment or impairments are of such severity that

[she] is not only unable to do [her] previous work but cannot, considering [her]

age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a

five-step evaluation process.  *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482

U.S. 137, 140-42 (1987).  The Commissioner begins by deciding whether the

claimant is engaged in substantial gainful activity.  If the claimant is working,

disability benefits are denied.  Next, the Commissioner decides whether the

claimant has a "severe" impairment or combination of impairments, meaning that

which significantly limits her ability to do basic work activities.  If the claimant's

impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to

draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ should not ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

> [The] claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the

ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding.  *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

### *ANALYSIS*

Hays alleges that his disability began in September 1995.  To qualify for disability insurance benefits under Title II, a plaintiff must meet the insured status requirements of sections 216(i) and 223 of the Social Security Act.  It is undisputed in the present case that Hayes was insured under the Act until June 30, 2010.  For Title II benefits Hays has the burden to show that he was disabled before June 30, 2010 when his insured status expired.  The ALJ noted that the record does not contain any treatment records until October 19, 2011.  Hays did not offer any medical evidence dated June 30, 2010 or before.  As a result, there is not any medical evidence in the record made during the insured period that supports Hays' claim that he was disabled before his insured status expired on June 30, 2010.

To be entitled to supplemental security income under Title XVI of the Act, Hays must show that he was disabled from February 19, 2015, the date he applied for benefits, through October 18, 2017, the date the ALJ issued her decision.

Hays argues in this appeal that the ALJ's finding of Hays' residual functional capacity is not supported by some medical evidence.  He also argues that the hypothetical question to the vocational expert regarding work in the

economy that Hays could perform was based on a flawed residual functional capacity assessment by the ALJ.

*A. The ALJ's determination of Shear's RFC was supported by the medical evidence of record.*

Hays argues that the ALJ's findings of Hays' RFC is not supported by some medical evidence. This claim is without merit. The ALJ reviewed Hays' medical records which revealed that Hays had medically determinable impairments which significantly limited Hays' ability to perform basic work activities. [Doc. 15-4, TR. at 97] The ALJ thoroughly reviewed the record. She found that Hays had severe impairments of degenerate disc disease of the lumbar spine, hypertension, anxiety, and PTSD. [*Id.*] In addressing Hay's mental state the ALJ concluded that Hays had moderate limitations in the domain of understanding, remembering or applying information. Although he may have limitations with complex tasks and instructions, evidence in the record supported her finding that he could perform simple and learned tasks in a reasonable and competent fashion when he adheres to his designed clinical protocol. [*Id.*] She cited to Hays' ability to read, write, cook simple meals, perform household chores, and drive a car in support of her analysis.

The ALJ found that Hays had moderate limitations in his ability to interact with others. She determined that based on this limitation Hays should be limited to having only limited contact with co-workers and no direct interaction with the

public.  [*Id.* at 98]  She supported this finding in referring to Hays' testimony and medical records that indicate he has panic attacks in crowds and confined situations. Hays' testimony and medical records also reflect that he is able to secure his medications monthly and gets along with family and friends.  [*Id.*]

The ALJ found that Hays' also had moderate limitations with regard to concentrating, persisting, or maintaining pace.  Despite his PTSD, when Hays is compliant with his medications, he is found alert and cooperative with logical and goal directed thoughts.  In support of this finding the ALJ cited to several medical examinations in the record.  [*Id.*]  The ALJ found Hays to be moderately limited regarding Hays' ability for adapting and managing himself.  Despite his anxiety and PTSD the record indicates he is independent with self-care in that he is able to cook, do light household chores, count money, bank, shop, and drive a car.  [*Id.*]

The ALJ analyzed the evidence in the record of Hays' mental health.  She did not agree with the state agency psychologist Dr. Morgan's conclusion that Hays' PTSD and anxiety were non-severe.  To the contrary, the ALJ concluded that these conditions were severe.  She noted that while Hays reports mental health issues due to anxiety and PTSD for the past twenty years, there is no clinical or empirical corroborative evidence to verify or support the existence of disabling mental limitations dating back to 1995.  The first documented record of mental health treatment begins in August 2014 during his incarceration in St. Charles County jail.

[TR. at 349-350]   In was not until October 26, 2015, after he had applied for social security disability benefits, that Hays begins to be treated regularly for anxiety and PTSD by his primary physician Dr. Gjorgjievski.  In his medical records with Dr. Gjorgjievski, Hays is found to be cognizant, functional, cooperative, and alert with logical and goal-oriented thoughts, intact memory, fair insight and judgment, and is free of hallucinations and or delusion.  He has been prescribed Xanax which he takes and refills regularly.  He has reported to Dr. Gjorgjievski that it has improved his anxiety and panic attacks.  [*Id.* at 101]  Hays' treatment for his anxiety and PTSD has been limited to psychotropic medication prescribed by Dr. Gjorgjievski.  Hays has not been referred to counseling or psychiatric treatment for his condition.  Based Hays' apparent baseline of functioning, the ALJ concluded that Hays is capable of executing simple, routine tasks with minimal changes in a job setting and duties.

The ALJ credited Hays' testimony regarding his PTSD and anxiety symptoms yet she found that his testimony concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical and other evidence in the record.  [*Id.*]  I find that the ALJ's analysis regarding Hays' RFC regarding his mental impairments is supported medical evidence in the record.

Likewise, the ALJ's determination of Hays' RFC regarding his physical impairments is also supported by Hays' medical records.  Hays' hypertension is controlled by medication and his blood pressure is within a normal range when he

is taking his medication.  Nothing in the record reflects a disability or contributing factor based on hypertension.

 Hays' first medical record for treatment of back pain was on October 19, 2011.  Dr. Meyers proscribed Percocet and Valium.  Hays saw Dr. Meyers again on December 28, 2011, regarding his back pain.  He had recurrent symptoms secondary to a Bobcat and lifting, Hays was doing concrete and roofing work.  There is no record of Hays being treated for back pain again until two years later when he saw Dr. Meyers on December 26, 2013.  Percocet and Flexeril were prescribed.

Then on December 3, 2014 and March 2, 2015, Hays presented himself to hospital emergency rooms complaining of back pain.  He was prescribed pain medication.

The next medical record regarding back pain is from Hays' first visit with his primary care physician Dr. Gjorgjievski on October 26, 2015.  He then began to see Dr. Gjorgjievski monthly to renew his prescriptions.

The ALJ noted that Hays' treatment for his back pain has been limited to conservative treatment consisting of pain medication and muscle relaxers.  He has not had surgery on his back and has not had prolonged hospitalization for his back.  He has never been referred for x-rays or magnetic resonance imaging for his reported musculoskeletal complaints.  Nor has he been referred to physical therapy.

[*Id.* 99-100]  The ALJ did credit that some of Hays' allegations of pain may be sincere, however, the clinically documented occurrence of pain and related symptoms indicated that it was not of the level of severity or need for treatment to be expected in light of Hay's disability allegations.  [Id. 99]  The ALJ did find that Hays' had a severe impairment of degenerative disc disease of the lumbar spine which would create some work-related limitations.  She also found that Hays' treatment has preserved or restored his ability to perform light activities and perform basic movements.  [*Id.* at 100]

I have reviewed the entire record regarding Hays' mental and physical disability claims.  I have considered evidence that supports the ALJ's RFC decision as well as any evidence that fairly detracts from the decision.  I find that the ALJ's RFC determination of Hays' mental and physical limitations are supported by substantial evidence in the record.  Hays' argument that the ALJ's determination is not supported by some medical evidence in the record is without merit.  The ALJ cited to relevant sections of Hays' medical records throughout her decision.

*B. The hypothetical question the ALJ posed to the vocational expert did capture the residual functional capacity determination supported by substantial evidence in the record.*

Hays argues that because the ALJ made an unsupported RFC determination her hypothetical question to VE was flawed.  Because I have already concluded that

the ALJ's determination of Hays' RFC was supported by substantial evidence, this ground for relief is without merit.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner of Social Security is affirmed.

An appropriate Judgement will be entered on this date.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 30th day of September, 2019.